

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | | |
|---|---|---|
| MELODY MONIQUE GUILLORY, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | CIVIL NO. 1:19-CV-632 |
| ANDREW SAUL, | § | |
| Acting Commissioner of Social Security | § | |
| Administration, | § | |
| *Defendant*. | § | |

## <u>MEMORDANDUM OPINION AND ORDER</u>

Plaintiff, Melody Monique Guillory, seeks judicial review of the Commissioner of the Social Security Administration's final decision denying Plaintiff's application for disability-based benefits.  (Doc. No. 1).  In accordance with 28 U.S.C. § 636(c), the Parties in this case have consented to have a United States Magistrate Judge conduct all proceedings, including trial, entry of a final judgment, and all post-judgment proceedings. (*See* Doc. Nos. 12, 13).  The undersigned finds that the Commissioner's decision denying Plaintiff's application should be affirmed.

# I.     Background

## A.  Procedural History

On May 10, 2017, Plaintiff filed an application for disability insurance benefits and supplemental security income benefits, alleging disability since March 24, 2017.  (Doc. No. 11-3 at 22, 35).  On March 28, 2017, an Administrative Law Judge (ALJ) denied Plaintiff's application.  (Doc. No. 11-3 at 2).  On November 3, 2017, Plaintiff filed a request for reconsideration.  (Doc. No. 11-4 at 15).  On March 6, 2019, the ALJ denied Plaintiff's application for benefits upon reconsideration.  (Doc. No. 11-2 at 13).  Plaintiff appealed the ALJ's decision to the Appeals Council (AC), and the AC denied Plaintiff's request for review on October 17, 2019.  (Doc. No. 11-2 at 2).  As a result, the ALJ's decision became the Commissioner's final decision for purposes of review before this Court.  (*Id.* at 13).  On December 20, 2019, Plaintiff timely filed this civil action pursuant to 42 U.S.C. § 405(g), asking the Court to review her denied application for social security benefits.  (Doc. No. 1).

## B.  Entitlement to Benefits and Sequential Evaluation Process

To qualify for disability benefits, a claimant must suffer from a disability.  *See* 42 U.S.C. § 423(d)(1)(A).  The Social Security Act defines a disability as a "medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity."  *Id.*; *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002).  The Commissioner typically uses a sequential five-step process to determine whether a claimant is disabled within the meaning of the Social Security Act.  *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002); 20 C.F.R. § 404.1520 (2021).  The applicable analysis is as follows:

> First, the claimant must not be presently working.  Second, a claimant must establish that he has an impairment or combination of impairments which significantly limit [her] physical or mental ability to do basic work activities.  Third, to secure a finding of disability without consideration of age, education, and work experience, a claimant must establish that his impairment meets or equals an

2

> impairment in the appendix to the regulations ["The Listings"].  Fourth, a claimant
> must establish that his impairment prevents him from doing past relevant work.
> Finally, the burden shifts to the Secretary to establish that the claimant can perform
> the relevant work.  If the Secretary meets this burden, the claimant must then prove
> that he cannot in fact perform the work suggested.

*See Waters*, 276 F.3d at 718 (quoting *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991)); *see also* 20 C.F.R. § 404.1520.

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity (RFC).  *Kneeland v. Berryhill*, 850 F.3d 749, 754 (5th Cir. 2017); 20 C.F.R. § 404.1520(e).  "The claimant's RFC assessment is a determination of the most the claimant can still do despite his [or her] physical and mental limitations and is based on all relevant evidence in the claimant's record."  *Kneeland*, 850 F.3d at 754 (alteration in original) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005).  The ALJ uses the RFC at Step Four to determine whether the claimant can perform his or her past relevant work and if not, at Step Five to determine whether the claimant can perform other work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), (v).  If at any step the Commissioner finds whether the claimant is disabled, the ALJ need not continue the analysis. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

## C.  <u>Summary of the ALJ's Decision</u>

Plaintiff was 28 years old at the time she alleged the onset of her disability.  (Doc. No. 11-2 at 27).  She has a high school education and past work experience as a cashier, cleaner-housekeeper, and security guard.[1]  (Doc. No. 11-6 at 8).

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R § 404.1520(a)(4) and ultimately concluded that Plaintiff was not disabled.  (Doc. No. 11-2 at 13).  Specifically, the ALJ founds as follows:

---

[1] The relevant evidence of record is amply set forth in the Parties' briefs and need not be repeated here.  Specific facts relevant to the Court's disposition of this case are discussed below.

- At Step One, Plaintiff had not engaged in substantial gainful activity[2] since March 24, 2017, the alleged onset date.  (*Id.* at 18).

- At Step Two, Plaintiff had "[t]he following severe impairments: degenerative disc disease (DDD), anxiety disorder, and depressive disorder."  (*Id.*).

- At Step Three, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id.* at 19).

- At Step Three but before Step Four, Plaintiff had the RFC to "perform medium work . . . except [Plaintiff] has additional limitations.  Specifically, [Plaintiff] cannot climb ladders, ropes, or scaffolds.  [Plaintiff] could frequently stoop, kneel, crouch, and crawl.  [Plaintiff] may need to alternate walking and standing with sitting for 10 minutes in the morning and in the afternoon, in addition to normal breaks while remaining on task.  [Plaintiff] is limited to frequent interactions with the public.  [Plaintiff] cannot have [a] high stress job, defined as involving assembly line or production paced work.  [Plaintiff] cannot work with unrestricted access to drugs and alcohol.  [Plaintiff] may be off task up to 10% of the day due to psychological symptoms interfering with concentration, persistence, and pace.  Additionally, Plaintiff is limited to semi-skilled or less skilled level jobs."  (*Id.* at 22).

- At Step Four, relying on the testimony of the vocational expert (VE) and considering Plaintiff's RFC, she was capable of performing any past relevant work as a cleaner-housekeeper and gate guard.  (*Id.* at 26).

- At Step Five, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that she could perform: merchandise marker, garment sorter, and laundry worker.  (*Id.* at 28).

## II.  Standard of Review

Review of Social Security disability cases "[i]s limited to two inquiries:  (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard."  *See generally* 42 U.S.C. § 405(g) (describing and elaborating on the standard for judicial review of decisions of the Commissioner of Social

---

[2] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether a profit is realized). 20 C.F.R. § 404.1572(a) (2021).

Security); *Perez*, 415 F.3d at 461 (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). Substantial evidence is "more than a mere scintilla and less than a preponderance." *Id.* (quoting (quoting *Masterson*, 309 F.3d at 272). It refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In applying this standard, the court "[m]ay not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* The Court may affirm only on the grounds that the Commissioner stated for his decision. *Cole v. Barnhart*, 288 F.3d 149, 151 (5th Cir. 2002) (per curiam).

Reviewing courts give the Commissioner's decisions great deference. *Id.* at 565-66. Courts may not re-weigh evidence, try issues de novo, or substitute their judgments for those of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). A court cannot reverse the Commissioner simply because the court might have decided the case differently in the first instance. *Elfer v. Texas Workforce Comm'n*, 169 F. App'x 378, 380 (5th Cir. 2006); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (stating that the court may not "substitute [its] judgment for that of the Secretary"). When the Commissioner fails to apply correct principles of law, or when substantial evidence does not support the Commissioner's decision, the governing statute authorizes a reviewing court to enter, upon the pleadings and the transcript of the record, a judgment modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. *See* 42 U.S.C. § 405(g). Thus, courts have the power to remand for further administrative proceedings, or they may direct the Commissioner to award benefits without a rehearing. Ordinarily, courts remand for further administrative proceedings to address and cure deficiencies. *See, e.g.*, *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

### III.    Discussion and Analysis

On appeal, Plaintiff presents two issues. First, Plaintiff alleges, "The ALJ's assessment of mental health evidence and opinions, and thus his assessment of the RFC, is unsupported by

substantial evidence." (Doc. No. 17 at 1).  Next, Plaintiff alleges, "The ALJ did not adequately consider Plaintiff's subjective complaints." (*Id.*).  The Court addresses each issue raised by Plaintiff in turn.

### A.  Whether the ALJ's RFC Finding was Unsupported by Substantial Evidence

First, Plaintiff asserts that the ALJ's RFC finding lacks substantial evidence because the ALJ failed to adequately consider the weight of Ravikumar Kanneganti's, M.D., a treating physician's, opinion pursuant to the factors under 20 C.F.R §§ 404.1520c and 416.920c.  (Doc. No. 17 at 13).  Second, Plaintiff alleges that the ALJ failed to mention Plaintiff's bipolar disorder. (*Id.*).  Third, Plaintiff contends that the ALJ failed to consider Social Security Ruling (SSR) 85-15, which "SSR 85-15 suggests Plaintiff is disabled in accordance with the evidence (including evidence of bipolar disorder) [sic] that the ALJ did not adequately consider." (*Id.* (citing SSR 85-15, 1985 SSR LEXIS 20, 1985 WL 56857 (Jan. 1, 1985))).  The Court addresses each argument in turn.

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC. *Kneeland*, 850 F.3d at 754; 20 C.F.R. § 404.1520(e).  RFC is an assessment, based on all relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite his impairments.  20 C.F.R. §§ 404.1545(a), 416.945(a) (2021).  It refers to the most a claimant can do despite his physical and mental impairments.  *Id.*  RFC has three components: physical abilities, mental abilities, and other abilities affected by impairments.  *Id.*

RFC is what an individual can still do despite his limitations.  SSR 96-8p, 1996 SSR LEXIS 5, 1996 WL 374184, at *2 (July 2, 1996).  It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis.  *See Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001); SSR 96-8p, 1996 SSR LEXIS 5, 1996 WL 374184, at *2.  A regular and continuing basis is an eight-hour day, five days a week, or an

equivalent schedule.  *Id.*  RFC is a function-by-function assessment, with both exertional and non-exertional factors to be considered, and is based upon all of the relevant evidence in the case record. *Id.* at *3-*5.  The ALJ is solely responsible for determining a claimant's RFC.  *See Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990).  The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence.  SSR 96-8p, 1996 SSR LEXIS 5, 1996 WL 374184, at *19.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence.  *See* 20 C.F.R. §§ 404.1529, 416.929 (2021); SSR 96-7p, 1996 SSR LEXIS 4, 1996 WL 374186, at *1 (July 2, 1996); SSR 96-8p, 1996 SSR LEXIS 5, 1996 WL 374181, at *5.  The ALJ must also consider limitations and restrictions imposed by all of an individual's severe and non-severe impairments.  *Id.*  The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence.  *See, e.g.*, SSR 86-8, 1986 SSR LEXIS 15, 1986 WL 68636, at *8 (1986), superseded by SSR 91-7c, 1991 SSR LEXIS 7, 1991 WL 231791, at *1 (Aug. 1, 1991) (superseded only to the extent the SSR discusses the former procedures used to determine disability in children).  The ALJ is not required to incorporate limitations in an RFC finding that he does not find to be supported in the record.  *See Muse*, 925 F.2d at 790 ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.").  In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

1.  <u>Whether the ALJ properly consider Dr. Kanneganti's and Dr. Correia's opinions</u>

Plaintiff argues that the ALJ failed to consider the factors under 20 C.F.R. §§ 405.1520c(b)(2) and 416.920c(b)(2) in assessing the persuasiveness of Dr. Kanneganti's opinion. (Doc. Nos. 17 at 15; 20 at 2). Plaintiff contends that medical evidence in the record supports Dr. Kanneganti's opinion and states that "the perceived inconsistencies of the record rely on stock [language] attached to many notes in a preprinted form, sometimes supplemented by markings." (*Id.*). Plaintiff avers that, in comparison, the opinion of Dr. Correia, upon which the ALJ relies in part, lacks support because Dr. Correia did not have access to Plaintiff's entire medical record and Dr. Correia's opinion "depends on a solitary exam for support." (*Id.*).

In response, the Commissioner argues that the ALJ properly applied the factors under 20 C.F.R. §§ 404.1520c(b)(2) and 416.920c(b)(2) when assessing the weight of medical opinions. (Doc. No. 19 at 6). The Commissioner notes that the ALJ is required to "[e]xplain in his decision how persuasive he finds a medical opinion(s) and/or a prior administrative medical finding(s) based primarily on these two factors." (*Id.* (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2))). The Commissioner continues, "The ALJ may, but is not required to except under certain circumstances, explain how he considered the other evaluation factors in the hearing decision." (*Id.* (citing 20 C.F.R. § 404.1520c(b)(3))). In his analysis of the medical record, the Commissioner contends that there is substantial evidence to support the ALJ's finding of weight assessed to both Dr. Correia's and Dr. Kanneganti's medical opinions pursuant to the factors under 20 C.F.R. §§ 404.1520c(b)(2) and 416.920c(b)(2). (*See id.* at 5-9).

The Regulations detail how the ALJ must consider medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Plaintiff filed her claim on May 10, 2017, so 20 C.F.R. §§ 404.1520c(a) and 416.920c(a) govern the standard by which the ALJ considers medical opinions.

The ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." *Id.* Rather, the ALJ considers medical opinions and prior administrative medical findings according to the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant, which includes considering the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) other factors. *Id.* at §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The most important factors are supportability and consistency. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ must articulate the persuasiveness of all medical opinions pursuant to the factors and may do so in a single analysis; however, the ALJ need not articulate his consideration of each medical opinion individually. *Id.* at §§ 404.1520c(b)(1), 416.920c(b)(1).

The ALJ considered each medical opinion, including Dr. Kanneganti's and Dr. Correia's, and explained whether he found the opinions to be persuasive as required by 20 C.F.R. § 404.1520c(b). The Court addresses the extent to which the ALJ considered Dr. Kanneganti's and Dr. Correia's medical opinions in accordance with the supportability and consistency factors pursuant to 20 C.F.R. §§ 404.1520c(a) and 416.920c(a).

On December 19, 2018, Dr. Kanneganti completed a mental impairment questionnaire concerning Plaintiff. (Doc. No. 11-12 at 127-29). Dr. Kanneganti opined that Plaintiff experienced marked degrees of impairment in the abilities:

- to remember locations and work-like procedures;
- to understand and remember detailed instructions;
- to carry out detailed instructions;
- to maintain attention and concentration for extended periods;
- to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;
- to sustain an ordinary routine without special supervision;

- to work in coordination with or in proximity to others without being distracted by them;
- to complete a normal workday without interruptions from psychologically based symptoms;
- to complete a normal workweek without interruptions from psychologically based symptoms;
- to perform at a consistent pace with a standard number and length of rest periods;
- to accept instructions and respond appropriately to criticism from supervisors;
- to get along with coworkers or peers without distracting them or exhibiting behavioral extremes;
- to respond appropriately to changes in the work setting; and
- to set realistic goals or make plans independently of others.

(*Id.*).

First, the ALJ properly addressed the consistency factor because the ALJ noted that Dr. Kanneganti's opinion was not entirely consistent with Plaintiff's mental status exams.  (Doc. No. 11-2 at 24).  The findings showed euthymic (normal) or neutral mood, intact memory, good concentration, no cognitive issues, and no difficulties in social functioning.  (Doc. Nos. 11-2 at 25; 11-11 at 84, 86, 88, 90, 95, 99, 101, 103, 105, 107, 109, 111, 218, 222, 226, 229, 232, 235; 11-12 at 112).  Second, the ALJ properly addressed the supportability factor because the ALJ reasoned that Dr. Kanneganti's opinion was mostly unpersuasive because his opinion lacked support from objective medical evidence.  (Doc. No. 11-2 at 25).  Accordingly, the Court finds that the ALJ properly followed the requirements in 20 C.F.R. §§ 404.1520c and 416.920c, and substantial evidence supports the ALJ's persuasive finding of Dr. Kanneganti's opinion as considered under the factors.

On September 12, 2017, Dr. Correia completed a psychological report.  (Doc. No. 11-11 at 69-73).  Dr. Correia opined that Plaintiff showed adequate and age-appropriate social skills, intact memory, good concentration, and normal mood and affect.  (*Id.* at 71-72).  Concerning Plaintiff's functional capacity, Dr. Correia opined that:

> [Plaintiff] has the ability to understand, remember[,] and/or apply information.  She
> is capable of learning, recalling[,] and using information to perform work activities.
> She can follow two-step instructions to carry out normal tasks.  She possesses the
> ability to make work related decision independently and can work with supervisors
> and co-workers.

(*Id.* at 72).  In sum, the ALJ specifically highlighted many of the findings in Dr. Correia's opinion.

(*See* Doc. No. 11-2 at 25).

Here, the ALJ considered the supportability factor because the ALJ determined that Dr.

Correia's opinion was generally supported by Dr. Correia's examination findings.  (*Id.*).  Also, the

ALJ considered the consistency factor because he found that Dr. Correia's opinion was somewhat

persuasive overall.  (*Id.*).  In particular, the ALJ qualified the persuasive weight that he assigned

to Dr. Correia's medical opinion concerning Plaintiff's work limitations.  (*Id.*).  The ALJ found

that the weight of the medical evidence supported the limitation to semi-skilled or less skilled work

rather than the more restrictive limitation to two-step instructions.  (*Id.*).

The ALJ properly weighed Dr. Kanneganti's and Dr. Correia's opinions against the entire

record.  "The ALJ is free to reject the opinion of any physician when the evidence supports a

contrary conclusion."  *See Garcia v. Berryhill*, 880 F.3d 700, 705 n.7 (5th Cir. 2018) (quoting

*Newton*, 209 F.3d at 455).  The Court may not reweigh the evidence or substitute its judgment for

the Commissioner's.  *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).  The issue is not

whether other conclusions are possible, but whether the conclusion reached is supported by

substantial evidence.  *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).  Therefore, the ALJ's

RFC determination is supported by substantial evidence.

### 2.   Whether the ALJ failed to mention Plaintiff's bipolar disorder

Plaintiff argues that the ALJ erred at Step Two, Step Three, and the RFC determination

because he failed to consider her bipolar disorder in the analysis of the sequential evaluation

process.  (Doc. No. 17 at 15).  Plaintiff cites to the medical record, which she alleges indicates

Plaintiff's bipolar disorder.  (*Id.* at 16; Doc. Nos. 11-11 at 28, 83-84, 221, 226, 234; 11-12 at 127).

Accordingly, Plaintiff argues that the ALJ cannot omit consideration of a known impairment from

the RFC.  (Doc. No. 17 at 16 (citing 20 C.F.R. §§ 405.1545(a)(2), 416.945(a)(2))).

Plaintiff has the burden to establish that bipolar disorder was a severe impairment.  *See*

*Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  Pursuant to the Regulations, a severe impairment

is "any impairment or combination of impairments which significantly limits [the claimant's]

physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  An impairment

is not severe "only if it is a slight abnormality having such minimal effect on the individual that it

would not be expected to interfere with the individual's ability to work . . ."  *Stone v. Heckler*, 752

F.2d 1099, 1104-05 (5th Cir.1985).  As noted, "[t]he claimant has the burden of proving his

disability[.]"  *Leggett*, 67 F.3d at 566.  "The ALJ has a duty to develop facts fully and fairly, but

reversal is appropriate only if the applicant shows that he was prejudiced."  *Andablo v. Astrue*, No.

3:12-CV-0560-D, 2012 U.S. Dist. LEXIS 148564, 2012 WL 4893215, at *4 (N.D. Tex. Oct. 16,

2012) (Fitzwater, C.J.) (quoting *Ripley*, 67 F.3d at 557) (internal quotation marks omitted).  "The

ALJ's duty to investigate, though, does not extend to possible disabilities that are not alleged by

the claimant or to those disabilities that are not clearly indicated on the record."  *Leggett*, 67 F.3d

at 566.  Furthermore, to support remand based on a failure to fully develop the record, a disability

claimant must show that the ALJ's failure to develop the record prejudiced the claimant.  *Carey v.*

*Apfel*, 230 F.3d 131, 142 (5th Cir. 2000).  Prejudice is established if a claimant shows that she

"could and would have adduced evidence that might have altered the result" reached by the ALJ.

*Id.* (citing *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)).

Here, Plaintiff avers she has bipolar disorder as an impairment for the first time before the

Court.  (*See* Doc. No. 17 at 15-16).  Plaintiff had multiple opportunities to allege bipolar disorder

as a medical condition in her application for benefits.  (*See* Doc. No. 11-6 at 6-16).  When asked

to list all of her physical or mental conditions (including emotional or learning problems) that limit her ability to work, she excluded bipolar disorder from the list of six other reported conditions. (*Id.* at 2).  Plaintiff was also asked to list her medications in which she provided the name of each medicine and the reason she was taking it.  (*Id.* at 9-10).  Plaintiff failed to list bipolar disorder as a reason for any of her medications.  (*Id.*).  Plaintiff was asked whether she saw a doctor or other health care professional or received treatment at a hospital or clinic, and whether she had a future appointment scheduled.  (*Id.* at 10).  Plaintiff listed each hospital visit and elaborated on the purpose for each visit.  (*Id.* at 11-15).  Plaintiff failed to specify bipolar disorder as a reason for any health care treatment.  (*Id.*).  She also failed to report bipolar disorder to the consultative examiner, Dr. Correia.  (Doc. No. 11-11 at 69).  Moreover, Plaintiff did not assert bipolar disorder during her hearing testimony.  (*See* Doc. No. 11-2 at 38-61).

In this case, the ALJ had a duty to investigate and consider impairments Plaintiff alleged. (*See* Doc. No. 11-2 at 18-19).  In fact, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease, anxiety disorder, and depressive disorder.  (*Id.* at 18). However, that duty does not extend to possible disabilities that Plaintiff fails to allege or those that are not clearly indicated in the record, including Plaintiff's alleged bipolar disorder.  *Leggett*, 67 F.3d at 566.  On one hand, Plaintiff's medical record briefly alludes to the existence of bipolar disorder based on Dr. Kanneganti's diagnosis.  (*See* Doc. Nos. 11-11 at 28, 83-84, 221, 226, 234; 11-12 at 127).  On the other hand, Plaintiff failed to allege bipolar disorder as an impairment sufficient to impose a duty on the ALJ to investigate further and appropriately consider it.  *See Sweeten v. Astrue*, No. 3:11-CV0934-G-BH, 2012 U.S. Dist. LEXIS 122796, 2012 WL 3731081 *26-*27 (N.D. Tex. Aug. 13, 2012) (finding no error in the ALJ's failure to consider anxiety as a severe impairment where the plaintiff failed to claim anxiety as an impairment before the ALJ, the

medical records showed only an occasional display of symptoms, and she never sought treatment for anxiety).

The ALJ's failure to find Plaintiff's bipolar disorder as a severe impairment was not an error when Plaintiff failed to raise it before the ALJ, and the record briefly mentions it as a condition. *See Leggett*, 67 F.3d at 566 ("Because [the claimant] never raised the issue of mental impairment until this appeal, [the claimant] cannot say that he put his mental impairments before the ALJ."); *Andablo*, 2012 U.S. Dist. LEXIS 148564, 2012 WL 4893215 at *13-*14 (finding that the ALJ did not err in failing to consider education or intelligence as a possible limitation when the claimant first asserted the limitation in his brief to the Appeals Counsel because the ALJ's duty did not extend to investigate disabilities not alleged by Plaintiff). Even if Plaintiff had alleged bipolar disorder as an impairment in her application, she cannot show prejudice because Dr. Kanneganti's opinions that diagnosed Plaintiff with bipolar disorder were given little weight by the ALJ. (Doc. No. 11-2 at 24-25). Plaintiff has not demonstrated prejudice, and remand is not required on this issue.

### 3. Whether the ALJ failed to consider SSR 85-15

Plaintiff argues that the ALJ did not properly consider the medical evidence pursuant to SSR 85-15. (Doc. No. 17 at 13). Plaintiff contends that SSR 85-15 and the medical evidence of record suggest that Plaintiff is disabled. (*Id.* at 13). In response, the Commissioner argues that to the extent that SSR 85-15 is relevant, it merely restates definitions from another applicable regulation. (Doc. No. 19 at 9 (citing 20 C.F.R. §§ 404.1522(b), 416.922(b) (2021))). The Commissioner contends that SSR 85-15 establishes a broad policy statement but does not "direct any specific analysis or decision outcome based on the existence of a medical opinion that the finder of fact found to be unsupported, and therefore[,] not persuasive." (*Id.*).

To the extent that Plaintiff relies on SSR 85-15, she states the following:

> SSR 85-15 highlights the significance of the ability to meet the basic mental demands of competitive, remunerative, unskilled work, which are, "to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting."  SSR 85-15.  A substantial loss of such an ability would severely limit the potential occupational base, justifying a finding of disability as "even favorable age, education, or work experience will not offset such a severely limited occupational base."  SSR 85-15.

(Doc. No. 17 at 16).

Plaintiff's argument is conclusory.  Plaintiff merely cites SSR 85-15 without arguing how it applies.  (*See id.*).  Plaintiff's only applicable argument is that "Dr. Kanneganti's opinion is disabling as it presents marked limitation[s] in areas vital to work."  (*Id.*).  This Court has already addressed Plaintiff's arguments as they relate to the applicability of Dr. Kanneganti's opinion.  Indeed, the Court concluded that substantial evidence supports the ALJ's finding that "Dr. Kanneganti's opinion was mostly unpersuasive, particularly where he overstated Plaintiff's limitations . . ."  (Doc. No. 11-2 at 24-25).  To the extent that Plaintiff continues to argue the applicability of Dr. Kanneganti's opinion, the Court construes this as an invitation by Plaintiff to reconsider its weight.  The Court "[m]ay not reweigh the evidence or substitute [its] judgment for the Commissioner's."  *Perez*, 415 F.3d at 461 (citing *Greenspan*, 38 F.3d at 236).  Otherwise, to do so, the Court would be reaching beyond the parameters of its authority.  Accordingly, the Court reiterates that substantial evidence supports the ALJ's RFC finding.

## B.  Whether the ALJ Adequately Considered Plaintiff's Subjective Complaints

Plaintiff contends that the ALJ did not properly consider her subjective complaints in accordance with 20 C.F.R. §§ 404.1529(c)(1) and 416.929(c)(1).  (Doc. No. 17 at 17).  Plaintiff alleges that the ALJ rejected her symptoms solely because medical evidence did not support her claims, which she argues is impermissible.  (*Id.*).  Plaintiff avers that because the ALJ failed to consider her alleged bipolar disorder, the ALJ failed to consider general subjective complaints

associated with bipolar disorder—lack of compliance with therapy treatment and episodic symptoms that result in highs and lows. (*Id.* at 18, 19).

In response, the Commissioner alleges that Plaintiff is arguing that the ALJ should have inferred the presence of bipolar disorder. (Doc. No. 19 at 11). The Commissioner contends that Plaintiff's alleged symptoms are generally attributable to bipolar disorder without referring to her own symptoms. (*Id.*). Therefore, the Commissioner concludes that Plaintiff "cannot [meet] her burden of showing error in the ALJ's assessment of her reported symptoms." (*Id.*).

Plaintiff filed a reply to the Commissioner's arguments. (Doc. No. 20 at 3). Plaintiff noted that the Commissioner did not respond to her argument that the ALJ allegedly did not properly consider her subjective complaints in accordance with 20 C.F.R. §§ 404.1529(c)(1) and 416.929(c)(1). (*Id.*). Plaintiff also reasserts her general argument that "her symptoms cannot be rejected solely because the medical evidence does not substantiate her claims." (*Id.*).

The ALJ is the fact finder and may determine the credibility of witnesses and medical evidence. *See Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991) (per curiam). The Regulations provide that when making a disability determination, the adjudicator must consider subjective symptoms, including pain, and the extent to which those symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(a), 416.929(a). The ALJ is required to follow a two-step "objective-subjective" process in evaluating the claimant's subjective evidence and the applicant's credibility if a credibility determination is necessary. *See Salgado v. Astrue*, 271 F. App'x 456, 458 (5th Cir. 2008) (per curiam). Under this two-step process to evaluate an applicant's subjective claims, the adjudicator must first determine whether there is an impairment that reasonably produced the symptoms of which the claimant complains. *Id.* If the adjudicator finds no impairment, the individual is not disabled. *Id.* If an impairment is identified, the adjudicator then considers the applicant's statements about symptoms

and the remaining evidence in the record to determine the strength of the symptoms and how the symptoms affect the applicant's ability to do basic work.  *Id.*  The adjudicator also determines the credibility of the applicant's claims about symptoms.  *Id.*  The two-step process is outlined in SSR 96-7p:

> 1. [Objective] No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms.

> 2. [Subjective] When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.

*Id.* at 458-59 (citing SSR 96-7p, 1996 SSR LEXIS 4, 1996 WL 374186 at *1).[3]

At the first step—the objective evaluation—the ALJ found that Plaintiff had severe impairments of degenerative disc disease, anxiety disorder, and depressive disorder.  (Doc. No. 11-2 at 18).  Plaintiff challenges the ALJ's findings at the second step—the subjective evaluation— and argues that the ALJ only considered the second factor (location, duration, frequency, and intensity of pair or other symptoms) and failed to consider all other factors pursuant to 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3).  (Doc. No. 17 at 17-18).

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) provide a non-exclusive list of seven factors to be considered in making the second determination as to the credibility of a claimant's

---

[3] Relatedly, the Regulations require the adjudicator to "evaluate the intensity and persistence of [related] symptoms" to determine how those symptoms limit the claimant's capacity for work.  20 C.F.R. § 404.1529(c) (2021).  The adjudicator must consider "*all* of the available evidence, including [the claimant's] history, the signs and laboratory findings, and statements from [the claimant, and the claimant's] treating or non-treating source, or other persons about how . . . symptoms affect [the claimant]."  *Id.* (emphasis added).  Thus, the adjudicator cannot reject subjective complaints solely because "objective medical evidence does not substantiate [the claimant's] statements," but (s)he must consider medical evidence in determining the effect of subjective symptoms on a claimant's ability to work.  *Id.* at § 404.1529(c)(2).

subjective complaints.  *See Ashford v. Comm'r.*, No. 6:11CV155, 2013 U.S. Dist. LEXIS 29651, 2013 WL 821858, at *13-*14 (E.D. Tex. March 4, 2013) (Love, J.); *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3)   Specifically, this section states that factors relevant to the claimant's symptoms, such as pain, which the adjudicator considers, include:

(i)     claimant's daily activities;
(ii)    location, duration, frequency and intensity of pain or other symptoms;
(iii)   precipitating and aggravating factors;
(iv)    type, dosage, effectiveness and side effects of medication taken to relieve pain or other symptoms;
(v)     treatment, other than medication, undertaken to relieve pain or other symptoms;
(vi)    any other measures used to relieve pain or other symptoms; and
(vii)   other factors concerning functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  Although an ALJ must give specific reasons for a credibility determination, "neither the regulation nor interpretive case law requires that an ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form.  It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered."  *Ashford*, 2013 U.S. Dist. LEXIS 29651, 2013 WL 821858, at *14 (quoting *Prince v. Barnhart*, 418 F. Supp. 2d 863, 871 (E.D. Tex. 2005) (Hines, J.), *report and recommendation adopted by* 418 F. Supp. 2d 863 (E.D. Tex. 2005))).

In the ALJ's RFC finding, he summarized Plaintiff's subjective symptoms as follows:

[Plaintiff] alleged she had anxiety, depression, panic attacks, and dissociative symptoms.  [Plaintiff] indicated she only had 8-12 good days a month, where she can wash laundry, play games with her children, and take 30 minutes walks.  The remainder of the month were bad days [where] she cannot sleep, stays to herself, has anxiety, feels agitated, and feels detached.  [Plaintiff] also averred she generally had problems being around others.  She reported, for instance, that she has panicked and ran out of a grocery store in the past.  [Plaintiff] averred she also isolated herself from her children at times, requiring their father to come pick them up.  Per [Plaintiff], she continued to have 9-10 crying spells a week; experience agitation, nervousness, lack of motivation, and panic attacks; and feel detached despite taking psychiatric medication.  [Plaintiff] also indicated her activities of daily living were limited "at times" by her mental impairments because she stayed in bed a lot and did not feel the need to tend to personal care and hygiene.

18

(Doc. No. 11-2 at 23 (citations omitted)).

Here, the ALJ's decision sufficiently reflects his substantial compliance with the requirements of 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). First, the ALJ cited the pertinent Regulations, which demonstrate their relevance in his deliberations of Plaintiff's subjective symptoms. (Doc. No. 11-2 at 22). Second, the ALJ summarized evidence relevant to the factors. (*Id.* at 23-24); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Third, the ALJ articulated legitimate reasons for his decision. The Court analyzes whether substantial evidence supports the ALJ's findings of Plaintiff's subjective symptoms pursuant to the factors.

*Factor 1 (daily activities)*:

The ALJ noted that Plaintiff's mental impairments limited her activities of daily living because she stayed in bed and did not feel the need to tend to personal care and hygiene. (Doc. No. 11-2 at 23).

*Factor 2 (location, duration, frequency and intensity of symptoms)*:

Plaintiff agrees that the ALJ properly considered Factor 2. (*See* Doc. No. 17 at 17-18 (citing Doc. No. 11-2 at 23)).

*Factor 3 (precipitating and aggravating conditions)*:

The ALJ reported that Plaintiff had good and bad days each month. (Doc. No. 11-2 at 23). Plaintiff had 8 to 12 good days a month where she could wash laundry, play games with her children, and take 30-minute walks. (*Id.*). Plaintiff had bad days the remainder of the month where she could not sleep, stayed to herself, had anxiety, felt agitated, and felt detached. (*Id.*). Plaintiff indicated that despite taking psychiatric medication, she had nine to ten crying spells a week; experienced agitation, nervousness lack of motivation and panic attacks; and felt detached. (*Id.*).

*Factor 4 (type, dosage, effectiveness and side effects of medications)*:

As previously stated, the ALJ considered Plaintiff's symptoms when she took her psychiatric medication. (*Id.*).

*Factor 5(treatment, other than medication, to relieve symptoms) and Factor 6 (other measures to relieve symptoms)*:

Plaintiff points to no additional evidence of other treatment or other measures to relieve symptoms.

*Factor 7 (other factors)*:

The ALJ noted Plaintiff's statements about her problems being around others.  (*Id.*).  Plaintiff reported that she has panicked and ran out of a grocery store in the past and isolated herself from her children at times, requiring their father to come pick them up.  (*Id.*).

The ALJ, therefore, based his credibility determination on most, if not all, of the enumerated factors.  In sum, the ALJ's opinion is sufficient to ascertain that he considered all of the factors in accordance with correct legal standards.  Thus, the decision reflects no reversible error with respect to the ALJ's methodology for addressing Plaintiff's subjective symptoms.

Plaintiff also alleges that the ALJ rejected Plaintiff's symptoms based on the objective medical record.  (Doc. No. 17 at 17).  Although the ALJ is not permitted to reject Plaintiff's symptoms solely because it does not align with the objective medical evidence, the Regulations permit the ALJ to consider Plaintiff's symptoms in accordance with the objective medical evidence.  *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).  The ALJ did not deny Plaintiff's symptoms solely because of the medical evidence.  As detailed above, the ALJ properly addressed the seven factors in considering Plaintiff's subjective symptoms.

Plaintiff contends that the ALJ failed to consider the symptoms of her bipolar disorder.  (Doc. No. 17 at 18).  First, the Court concluded that there was substantial evidence to support the ALJ's finding that Plaintiff did not have bipolar disorder.  Second, even if the ALJ should have considered Plaintiff's subjective symptoms related to her bipolar disorder, Plaintiff failed to allege any subjective symptoms.  The Regulations require that the ALJ consider her subjective symptoms and not objective symptoms that are present in cases of bipolar disorder more generally.  *See id.*

at §§ 404.1529(c)(3), 416.929(c)(3).   As the Commissioner aptly argues, "[W]hile Plaintiff purports to address the ALJ's assessment of her self-reported symptoms, her arguments instead address symptoms generally attributable to bipolar disorder."  (Doc. No. 19 at 11 (citing Doc. No. 17 at 18, 19)).  In fact, the ALJ delves into great detail concerning Plaintiff's symptoms that she actually alleged.  (*See* Doc. No. 11-2 at 22-23).  Therefore, the Court finds that the ALJ properly considered Plaintiff's subjective symptoms in accordance with the Regulations.

## IV.   Conclusion and Order of the Court

Based on the findings and conclusions of law stated herein, the Court **ORDERS** that the Commissioner's decision is **AFFIRMED** and this above-titled social security action is **DISMISSED**.  The Court will enter final judgment separately.

**SIGNED this the 23rd day of April, 2021.**


KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE